EXHIBIT A – PART 1

**COMMONWEALTH OF MASSACHUSETTS**
**SUPERIOR COURT**

**SUFFOLK, SS**                                          **CA NO.**

| | | |
|---|---|---|
| James and Sheila Martel,<br>Seremy Francois, and Charles Watson<br>individually and on behalf of all other consumers<br>similarly situated,<br><br>                  Plaintiffs<br><br>v.<br><br>Daniel Cadle, individually and as owner or<br>controller of various legal entities;<br>The Cadle Company, an Ohio Corporation,<br>Cadleway Properties, Inc.,<br>a Texas Corporation, and Bobby D. Associates,<br>an Ohio Partnership,<br><br>and,<br><br>The Massachusetts Division of Banks<br>(In their capacity as an interested party)<br><br>                  Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT**<br>For<br>INJUNCTIVE,<br>DECLARATORY, AND<br>CLASS ACTION RELIEF,<br>AND DAMAGES<br>And<br>Consolidation With Related<br>Actions<br>And<br>Demand For Jury Trial |

The Plaintiffs aver, allege, and state as follows:

## I.  SUMMARY OF CLAIM AND RELIEF SOUGHT

1.      Plaintiffs seek equitable relief and damages against Defendant Daniel Cadle and the legal entities he owns and controls (Cadle) for Cadle's unlawful consumer debt collection activities in Massachusetts that has injured and continues to injure Plaintiffs. Cadle's ongoing consumer debt collection activities against the Plaintiffs are in open defiance of three Cease and Desist Directives issued by the Massachusetts Division of Banks (DOB) issued 4-14-03 (**Ex. A**), 12-10-03 (**Ex. B**), and 6-22-07 (**Ex. C**); are in contempt of the 11-27-07 and 12-6-07 Restraining Order issued in *Shanley* [1] (**Ex. D**) and the 12-7-07 Injunction

---

[1] *Shanley et al v. Cadle et al*, Suffolk Superior Court CA No. 07-5157-A removed to Federal Court and reissued in *Shanley et al v. Cadle et al*, USDC DMa CA No. 07-12247-RLS.

COMPLAINT
PAGE 3

## II.    PARTIES

5.    Plaintiffs James and Sheila Martel, a married couple, are adults who reside in Winthrop, Massachusetts, Suffolk County.

6.    Plaintiff Seremy Francois is an adult who resides in Cambridge, Massachusetts, Middlesex County.

7.    Plaintiff Charles Watson is an adult who resides in Brockton, Massachusetts, Plymouth County.

8.    Defendant Daniel Cadle is an adult whose business offices are located at 100 North Center Street, Newton Falls, Ohio and is an Ohio resident who resides in Newton Falls, Ohio. Daniel Cadle owns and controls several legal entities including the Defendant entities (collectively referred to as Cadle). Daniel Cadle and the Defendant entities he owns and controls do not maintain a place of business and/or do not keep assets in the Commonwealth.

9.    Defendant The Cadle Company (TCC) is an Ohio corporation whose business offices are located 100 North Center Street, Newton Falls, Ohio. Daniel Cadle owns and controls TCC.

10.    Defendant Cadleway Properties, Inc. (Cadleway) is a Texas corporation whose principal offices are located at 100 North Center Street, Newton Falls, Ohio.. Cadleway is owned and controlled by Daniel Cadle.

11.    Defendant Bobby D. Associates (Bobby D.) is an Ohio Partnership whose General Partners are Daniel Cadle and Robert Weltman whose principal offices are located at 100 North Center Street, Newton Falls, Ohio. Daniel Cadle owns and controls Bobby D.

12.    The Massachusetts Division of Banks is the agency charged by law to administer the laws and regulations pertaining to the regulation and licensing of collection of consumer debt in Massachusetts. They are named a Defendant in their capacity as an interested party.

## III.    SPECIFIC FACTUAL ALLEGATIONS

### A.    Cadle Operates A Consumer Debt Collection Operation In Massachusetts

13.    Since the early 1990's Daniel Cadle through Defendant entities and other corporate and partnership entities has operated a consumer debt collection operation that has targeted Massachusetts consumers.

COMPLAINT
PAGE 2

in the Attorney General's enforcement action[2] (**Ex. E**); and are being conducted despite the finding by the Suffolk Superior Court in *Soroko*[3] that Defendant The Cadle Company's debt collection activities have been in violation of the debt collection law and Chapter 93A since 1994 and Cadle's 10-24-07 representation to the Attorney General that Cadle had ceased such activity in response to contemplated enforcement action (**Ex. F**).

2.      In addition to damages for Defendants' unlawful acts against them, Plaintiffs seek Preliminary Equitable Relief, on behalf of themselves, enjoining Cadle, during the pendency of this action, from engaging in further attempts to collect against Plaintiffs in defiance of the DOB's Cease Directives and Massachusetts law and regulations pertaining to unlicensed debt collection, MGL c. 93 §24, 209 CMR 18 and Chapter 93A.

3.      Further, Plaintiffs, on their own behalf and on behalf of all other similarly situated Massachusetts consumers, seek Declaratory and Injunctive Relief declaring Cadle's ongoing debt collection activities to be unlawful and requiring Cadle to give notice regarding this action and the DOB's cease directives to the Massachusetts consumers who Cadle continues to unlawfully commununicate with and collect debt from. Such relief is required to prevent Defendants from continuing to injure similarly situated Massachusetts consumers who are unaware that Cadle's debt collection activities are unlawful and to prevent Cadle from continuing to profit from their unlawful debt collection activity at the expense of Massachusetts consumers like the Plaintiffs. See, 12-19-07 Affidavit of Plaintiff Sheila Martel and 1-11-08 Supplemental Affidavit by Sheila Martel (**Ex. G**); 1-4-08 Affidavit of Seremy Francois (**Ex. H**); 3-3-08 Affidavit of Charles Watson (**Ex. I**); and 1-3-08 Letter From Bluver, Esq. to Ass't AG Engel (**Ex. J**).

4.      In light of the fact that this action involves material issues that are common to the *Soroko*, AG enforcement action, and Cadle's action appealing the 6-22-07 DOB Decision, Plaintiffs request that this action be consolidated with these actions to ensure judicial economy and efficiency.[4]

---

[2] *Commonwealth of Massachusetts v. Daniel Cadle, et al*, Suffolk Superior Court CA No. 07-5359-D.

[3] *Chase (Soroko) v. Cadle, et al,* Suffolk Superior Court CA No. 04-0375-BLS1.

[4] The related actions are:

> -*Chase (Soroko) v. Cadle, et al*, Suffolk Superior Court CA No. 04-0375-BLS1;
> -*Commonwealth of Massachusetts v. Daniel Cadle, et al*, Suffolk Superior Court CA No. 07-5359-D; and,
> -*Cadle II v. Mass. Division of Banks*, Suffolk Superior Court CA No. 07-03202-A.

COMPLAINT
PAGE 4

### B.    Cadle's Consumer Debt Collection Operation Is Unlawful

14.    Cadle's Massachusetts consumer debt collection operation has been collecting debt in violation of Massachusetts debt collection laws, MGL c. 93 §24 and regulations, 209 CMR §18, and the Commonwealth's consumer protection laws, MGL c. 93A §2.

15.    Neither Daniel Cadle, the Defendant entities, or any other of the entities Daniel Cadle owns or controls has obtained a license to collect consumer debt in Massachusetts.

16.    Cadle collects consumer debt in Massachusetts without a license.

17.    Cadle uses unfair, deceptive, and abusive acts and practices in the collection of consumer debt in Massachusetts.

18.    The Suffolk Superior Court in *Chase* (*Soroko*) *v. Cadle, et al,* Suffolk Superior Court CA No. 04-0375-BLS1 found that TCC's unlicensed consumer debt collection against Massachusetts residents Mr. and Mrs. Soroko beginning in 1994 violated the debt collector licensing law, MGL c. 93 §24 both as it existed and as amended in 2004 and was a per se violation of the consumer protection act, MGL c. 93A §2.  The court based its decision on the fact that TCC was collecting the debt owned by an entity other than TCC (Cadlerock Joint Venture II LP, an Ohio limited partnership in which Cadlerock II Inc. an entity owned and controlled by Daniel Cadle is the General Partner) and therefore was collecting the "*debt of another*" making TCC a debt collector as defined by the statute as it existed before its revision in 2004.  The *Soroko* Court then determined that TCC was a "debt collector" under the revised statute because the "principal business" of TCC is "collection of debt."  The Soroko Plaintiffs have moved for summary judgment on the issue of Daniel Cadle's and the other Cadle defendants' liability for TCC's unlawful debt collection; damages including disgorgement of monies paid and gain received; and whether the Sorokos' claim is suitable for class certification.  See, *Soroko v. Cadle, et al,* Suffolk Superior Court CA No. 04-0375-BLS1.

19.    In its 6-22-07 Decision the DOB found that regardless of whether Cadle has been collecting the "debt of another" or collecting consumer debt purchased in default, "The Cadle Company has engaged in unlicensed debt collector activity in the Commonwealth in violation of General Laws Chapter 93, Section 24A" and that such violations of the statute were "per se" violations of the Consumer Protection Act, MGL c. 93A §2.  **Ex. C** p. 3.

### C.    Cadle Has Been Directed To Cease Its Unlawful Massachusetts Consumer Debt Collection

20.    On April 14, 2003 the Division of Banks directed Daniel Cadle, President of TCC:
**You are hereby directed to immediately cease engaging in any unlicensed or unauthorized collection activity in Massachusetts** ...

COMPLAINT
PAGE 5

See **Ex. A** (emphasis in the original).

21.     On December 10, 2003 the Division of Banks denied TCC's application for a debt
collector's license. The DOB based its decision in part on "the Applicant's pattern of
violating regulatory and judicial orders" and that "in spite of having been ordered by the
Division to cease operations in Massachusetts, the complaints filed by Massachusetts
consumers indicate that TCC has continued its debt collection operations ...". **Ex. B** p. 2-3.
The DOB concluded:

> These findings require the Division to conclude that the reputation, integrity, and net
> worth of the Applicant are insufficient and do not warrant the belief that the
> business will be operated honestly, fairly, soundly, and efficiently in the public
> interest.

**Ex. B** p. 3. The DOB then directed Cadle:

> Please be advised that Massachusetts General Laws chapter 93, §24 prohibits any
> person from conducting debt collection activities in Massachusetts without a license.
> **The Cadle Company, Daniel C. Cadle, and any of its affiliates are hereby
> directed to cease any such operations in Massachusetts.**

**Ex. B** p. 3 (emphasis in the original).

22.     On June 22, 2007 the DOB denied The Cadle Company II, Inc.'s (TCC II)[5]
application for a debt collector license. The DOB found:

> The facts and circumstances described above detail how Mr. Cadle either directly,
> or indirectly through an entity owned and controlled by him, has:  engaged in
> prohibited conduct in contacts made with Massachusetts consumers to collect debt;
> has knowingly engaged in unlicensed debt collection activity in the Commonwealth;
> has illustrated a pattern of conduct of substituting his own judgment for that of the
> Division and/or the courts; and has engaged in a pattern of abusive conduct.
> ...
> Based on the totality of the facts and circumstances set forth above, the Division
> does not find that the officer(s) and director(s) of Cadle II possess the character,

---

[5] TCC II is an Ohio corporation owned and controlled by Daniel Cadle that Daniel
Cadle has used to engage in unlawful debt collection in Massachusetts. TCC II is a
Defendant in *Soroko, supra*; *Shanley, supra*; and *Commonwealth of Massachusetts v.
Daniel Cadle, supra* and the Plaintiff in *Cadle II v. Mass. Division of Banks*, Suffolk
Superior Court CA No. 07-03202-A.

COMPLAINT
PAGE 6

> reputation, integrity, and general fitness to engage in the business of a debt collector in an honest, fair, and sound manner.

**Ex. C** p. 6-7. The DOB then directed Cadle:

> This decision, coupled with [DOB] Opinion 06-060, precludes Cadle II, Mr. Cadle, and any other unlicensed entity owned or controlled by him, from attempting to collect any debt from a consumer in the Commonwealth which Mr. Cadle, or any such entity, purchased when such debt was in a delinquent status.

**Ex. C** p. 7. The DOB's 06-060 Opinion is at **Exhibit Q.**

23.     The Suffolk Superior Court on 11-17-06 affirmed the 12-10-03 DOB decision denying TCC a license. *Cadle v. Mass. Div. Of Banks*, Suffolk Superior Court CA No. 04-0101-C. Cadle's appeal of the Superior Court's affirmance of the 12-10-03 denial is pending. See, *Cadle v. Mass. Division of Banks*, Appeals Court No. 07-P0649. Cadle's appeal to the Superior Court of the 6-22-07 denial of a license to TCC II is also pending. See, *Cadle II v. Mass. Division of Banks*, Suffolk Superior Court CA No. 07-03202-A.

24.     On October 18, 2007 the DOB denied the second application of TCC for a debt collector license. In denying the second application, the DOB found that the senior officers of The Cadle Company and The Cadle Company II, Inc. are the same including Daniel Cadle and that the "findings of violations" in its 6-22-07 Decision "are attributable" to The Cadle Company for purposes of the licensing law. The DOB stated:

> As set out above, the same three individuals [Daniel Cadle, President and CEO; Ruth A. Cadle, Secretary and Treasurer; and William Shaulis, Executive Vice President] comprise all of the senior officers of The Cadle Company and of Cadle II. Therefore the provisions of 209 CMR 18.04(2)(h) are triggered. Moreover, the Division's Notice of Denial of June 22, 2007 set forth several significant findings upon which the denial was based. Accordingly, the findings of violations stated in the Cadle II denial letter are attributable to The Cadle Company for the purposes of 209 CMR 18.04(2)(a). For these reasons the License Application submitted by The Cadle Company on October 11, 2007 is hereby denied pursuant to the provisions of 209 CMR 18.04(2)(a) and (h).[6]

10-18-07 DOB Decision p. 2 (**Ex. K**). The DOB again advised Cadle that it was unlawful to engage in the business of a debt collector in the Commonwealth without a license:

---

[6] 209 CMR 18.04 (2)(a) and (h) (**Ex. L**).

COMPLAINT
PAGE 7

> Please be advised that "No person shall directly or indirectly engage in the
> Commonwealth in the business of a debt collector … " under Massachusetts
> General Laws chapter 93, §24A without first obtaining a license from the
> Commissioner of Banks.

Id.

25.     In Answer to Cadle's appeal of its 6-22-07 Decision denying TCC II a license, the
DOB affirmed its findings regarding Cadle's ongoing defiance of the DOB's cease
directives and violation of Massachusetts law.  The DOB in its 12-27-07 Answer in *Cadle
II v. Mass. Division of Banks*, Suffolk Superior Court CA No. 07-03202-C
stated:

> The Plaintiff [TCC II] and affiliated entities owned or controlled by Daniel Cadle
> have unlawfully collected and attempted to collect consumer debts in the
> Commonwealth without a debt collector license in violation of G.L. c. 93 §24 and
> G.L. c. 93A §2(a) and the Division's orders to cease.  Plaintiff and affiliated entities
> have persisted in such conduct, with knowledge of its illegality, beginning at least as
> early as April 2003 and continuing at least until November 2007. See,
> *Commonwealth of Massachusetts v. The Cadle Company et al*, Suffolk Superior
> Court Civil Action No. 07-05359.

Answer, "First Separate Defense," in *Cadle II v. Mass. Division of Banks*, Suffolk Superior
Court CA No. 07-03202-A at **Exhibit P**.

### D.     Cadle Falsely Represented To The Attorney General It Ceased Its Consumer Debt Collection As Of 10-24-07.

26.     In the face of threatened enforcement action by the Attorney General (AG), Cadle,
by letter from its counsel dated 10-24-07, represented to the AG that "effective
immediately" Cadle would cease "direct consumer collection" including "telephone or
other contact":

> The Cadle Company (TCC) and its related entities, effective immediately, are
> ending all direct consumer collection in the Commonwealth, including its practice
> of sending 'hello' letters as well as telephone or other contact with Massachusetts
> consumers.

10-24-07 Letter From Mark Bluver, Esq. to Ass't. AG Jonathan Engel (**Ex. F**).

### E.     Cadle Has Been Restrained And Enjoined By The Suffolk Superior and Federal Courts From Continuing To Collect Consumer Debt In Massachusetts.

COMPLAINT
PAGE 8

27.    On November 27, 2007 the Suffolk Superior Court in *Shanley et al v. Cadle et al*, Suffolk Superior Court CA No. 07-5157-A issued the following Restraining Order against Defendants Daniel Cadle, The Cadle Company, The Cadle Company II, Inc. and CadleRock Joint Venture II, LP:[7]

> The Court having considered the matter and the documents and evidence presented, and the Court finding good cause has been shown that an immediate need exists in order to protect the Plaintiffs and other Massachusetts consumers similarly situated, as well as promote the public interest and safety and there being no other adequate means to address Defendants' ongoing conduct at issue, The Court hereby orders and directs as follows:
>
> > Defendants, their owners, officers, agents, and attorneys are hereby immediately ordered to refrain from engaging in any activity that attempts to collect consumer debt in Massachusetts for which a license to engage in such activity is required by the laws of the Commonwealth until such time as the Court further directs or the matter can be addressed by hearing on Plaintiffs' request for a preliminary injunction ...

11-27-07 Restraining Order in *Shanley et al v. Cadle et al*, Suffolk Superior Court CA No. 07-5157-A (**Ex. D**).

28.    On December 6, 2007 the Defendants in *Shanley et al v. Cadle et al*, Suffolk Superior Court CA No. 07-5157-A removed the action to Federal District Court. On the same day, the Federal Court issued the 11-27-07 Restraining Order as an Order of the Federal Court in *Shanley et al v. Cadle et al*, USDC DMa CA No. 07-12247-RCL.[8]

29.    On December 7, 2007 the Attorney General of Massachusetts instituted an enforcement action against Defendants Daniel Cadle, The Cadle Company, and The Cadle Company II, Inc. under the Massachusetts Consumer Protection Act, c. 93A seeking injunctive relief, restitution, recission, and penalties and costs for such Defendants' unlawful debt collection. *Commonwealth of Massachusetts* v. *The Cadle Company, et al*, Suffolk Superior Court CA No. 07-5359. In its Complaint, the Attorney General made a series of allegations that such Defendants continued to engage in unlawful, abusive, and

---

[7] 11-27-07 Restraining Order in *Shanley et al v. Cadle et al*, Suffolk Superior Court CA No. 07-5157-A (**Ex. D**).

[8] 12-6-07 Docket Entry Re Restraining Order in *Shanley et al v. Cadle et al*, USDC DMa CA No. 07-12247-RCL (**Ex. D**).

COMPLAINT
PAGE 9

unlicensed debt collection activities despite the directives by the DOB to cease such activity including:[9]

> 1 . The Attorney General brings this civil action in the public interest and on behalf of the Commonwealth of Massachusetts pursuant to G. L. c. 93A, 9 4, the Massachusetts Consumer Protection Act. The Defendants in this action are Ohio corporations and their controlling individual engaged in the business of debt collection.  As alleged in greater detail below, the Defendants committed a pattern and practice of unfair and deceptive acts or practices in violation of G. L. c. 93A,  5 2(a) by unlawfully collecting debt.
>
> ...
>
> 9. The Defendants are engaged in the business of debt collection.  The Defendants use the mail, telephone, and other means to communicate with Massachusetts citizens for the purpose of collecting debts owed or asserted to be owed to others.
>
> ...
>
> 12. Among other reasons, the Division of Banks cited TCC's ongoing operation as a debt collector, in defiance of an April 14, 2003 cease and desist order issued by the Division of Banks, as a basis for the denial of TCC's application.
>
> 13. The Division of Banks found that TCC's pattern of violating regulatory and judicial orders, together with the reputation, integrity, and net worth of TCC did not warrant the belief that TCC would operate honestly, fairly, soundly, and efficiently in the public interest.
>
> 14. Concluding its 2003 decision of denial, the Division of Banks stated, "The Cadle Company, Daniel C. Cadle, and any of its affiliates are hereby directed to cease any such operations in Massachusetts."
>
> 15. On June 22, 2007, the Division of Banks issued a Notice of Denial and written decision, under G. L. c. 93, §24, denying TCC II's August 3, 2005 application for a license to operate the business of a collection agency.
>
> 16. In considering the August 3, 2005 application, the Division of Banks found that TCC had engaged in unlicensed debt collector activity in the Commonwealth between the Division's December 10, 2003 license denial and TCC II's August 2005 application.

---

[9] Complaint in *Commonwealth of Massachusetts* v. *The Cadle Company, et al*, Suffolk Superior Court CA No. 07-5359 (**Ex. E**).

COMPLAINT
PAGE 10

17. The Division of Banks denied TCC II'S application for a debt collector license. The Division of Banks, in denying TCC II's license application, determined that Cadle had engaged in prohibited conduct in its contacts made with consumers to collect debt, knowingly engaged in unlicensed debt collection activity, demonstrated a pattern of substituting his own judgment for that of the Division of Banks, and engaged in a pattern of abusive conduct with respect to Massachusetts citizens from whom defendants collected debt.

18. Concluding its June 2007 denial, the Division of Banks stated, "[T]he Division denies [TCC II]'s License Application to engage in the business of a debt collector. This decision . . . precludes [TCC II], Mr. Cadle, and any other unlicensed entity owned or controlled by him, from attempting to collect any debt from a consumer in the Commonwealth which Mr. Cadle, or any such entity, purchased when such debt was in delinquent status."

B. The Defendants Continue to Collect Debt Without a License.

19. The Defendants continued to operate a debt collection business in the Commonwealth without a license, after the Division of Banks' 2003 denial and its 2007 denial.

20. Included among debts the Defendants have collected or attempted to collect in the Commonwealth are debts that have been discharged in bankruptcy.

21. On information and belief, as recently as November 12, 2007, the Defendants have attempted to collect debt from consumers in the Commonwealth.

30.    On December 7, 2007 the State court issued a stipulated injunctive order as follows:[10]

IT IS HEREBY ORDERED, after stipulation among the parties, that The Cadle Company, The Cadle Company II, Inc., and Daniel Cadle, individually, and their employees, successors and assigns, and all other persons and entities, individuals or trustees, corporate or otherwise, in active concert or participation with any of them, are HEREBY ENJOINED from:

    a.     Operating a debt collection business by collecting, or attempting to collect, directly or indirectly, debts owed by persons present or

---

[10] 12-7-07 Injunction in *Commonwealth of Massachusetts v. The Cadle Company, et al*, Suffolk Superior Court CA No. 07-5359 (**Ex. E**).

COMPLAINT
PAGE 11

>           resident in the Commonwealth, without a license from the
>           Massachusetts Division of Banks, pursuant to G.L. c. 93, §24;

          ...

12-7-07 "Stipulated Order" (Ex. E).

### F.      Cadle Targeted Plaintiffs For Unlawful Consumer Debt Collection.

31.     Cadle has attempted and continues to attempt to collect consumer debt from each of
the Plaintiffs. Cadle purchased the debt in default and/or the Cadle entity seeking to collect
the debt was doing so for another:

### G(1).      Cadle Subjected The Martels To Unlawful Debt Collection.

32.     Beginning in 2006, Cadle attempted to collect a loan debt from Plaintiffs James and
Sheila Martel that they had incurred in 1992 when they borrowed $10,000 as part of a
special Federal flood relief loan program to help the Martels recover from damage to their
home from a storm that had caused widespread damage to their community. The Martels
had been paying the government $49.00 a month on the debt for many years. The amount
had been debited from the Martel's account on a monthly basis.

33.     In the summer of 2006 the Martel's were served with a lawsuit on the debt in East
Boston District Court that claimed the debt was in default. *Cadleway v. James and Sheila
Martel*, East Boston District Court CA No. 0605CV0299. Sheila Martel called Mr.
Timothy McCarthy the lawyer listed on the lawsuit papers and was directed to a
representative from The Cadle Company. Mrs. Martel complained to Cadle that there was
no need for the lawsuit since the government had been debiting their account; for reasons
unknown to the Martels the debiting of the account had stopped; and the Martels would
agree to reauthorize the debiting of the account in favor of Cadle if Cadle would stop their
lawsuit against the Martels. In response, Cadle agreed to reinstate the account by collecting
$49 a month as a debit on the Martel's account. Sheila Martel at Cadle's direction sent a
letter confirming the agreement and sent in a voided check so Cadle could set up the
monthly debit account.

34.     Despite the agreement to debit the Martel account, Cadle moved and obtained a
default judgment on the debt for approximately $8,700 against the Martels in September,
2006 and had the "Writ of Execution" served on the Martels by the Sheriff. After Mrs.
Martel complained to Cadle that the Default Judgment was contrary to the monthly debiting
agreement, Cadle did not further prosecute its action at that time but continued to debit the
Martel account on a monthly basis.

COMPLAINT
PAGE 12

35.     In March 23, 2007, as a result of numerous phone calls by Mrs. Martel to Cadle requesting a statement about the account, Cadle sent the Martels a letter enclosing a document that purported to summarize the Martel's payment history.  The document provided the Martels by Cadle indicates that Cadle acquired the debt in August, 2004 and that Cadle deducted not only $49.00 a month as agreed but also made three separate debits for "attorneys fees" in 2006 totalling $482 which had not been authorized.

36.     Unknown to the Martels, Cadle subsequently instituted a supplementary process action against the Martels in May, 2007 and served it on them in June, 2007.  *Cadleway Properties v. James and Sheila Martel*, BMC East Boston Division Case No. 0705SP0097. The Martels again complained to Cadle that the supplementary process action was contrary to the monthly payment agreement and that the Martel account had been debited by Cadle throughout 2007.  Based on assurances given to them by Cadle, the Martels assumed that Cadle would no longer seek to prosecute the supplementary process action.

37.     In late November, 2007, soon after the November, 2007 $49.00 payment was deducted by The Cadle Company from the Martel bank account, the Martels received a "Civil Arrest Warrant (capias) for your arrest" dated November 28, 2007 from the Suffolk County Sheriff's Department regarding the Supplementary Process action by Cadleway Properties against the Martels regarding the debt.  The Warrant stated that "We will arrest you if necessary" if the Martels did not contact the Sheriff "to clear the default on our own".  The arrest Warrant stated that the Martels had to "RESPOND WITHIN 72 HOURS" "**FAILURE TO RESPOND COULD RESULT IN YOUR IMMEDIATE ARREST**".

38.     On December 7, 2007 the Martels received another "civil warrant (capias)" from the Sheriff issued by the court "for the purpose of securing your appearance in court".  The Martels were told that they "MUST" call the Sheriff's Office "immediately" "TO CONFIRM YOUR APPEARANCE IN COURT" on "**FRIDAY, DECEMBER 14, 2007 AT 9:00AM**".  Sheila Martel made several calls to Cadle and its lawyer regarding these arrest warrants and the fact that there was no basis for this action since the Martels were paying on the debt and that regular payments were being automatically deducted from their account by Cadle.

39.     After several conversations and pleas by Sheila Martel that brought her "to tears", the lawyer for Cadle finally agreed that the Martels were right.  By letter dated December 11, 2007 the lawyer for Cadle informed the Sheriff to "Please return the original capias" "The Defendant has been making payments".

40.     On December 19, 2007 the Plaintiffs in *Shanley* moved to hold Defendants in contempt for their illegal and abusive collection action against the Martels in violation of

COMPLAINT
PAGE 13

that Court's 12-6-07 Restraining Order.[11]  The next day, on December 20, 2007, The Cadle Company continued its illegal collection activity against the Martels by debiting the Martel account $49.00.

41.     The collection actions by Cadle involved conduct that was harassing, abusive, unfair, and deceptive.  The conduct included communications to Mrs. Martel's place of employment regarding the debt causing Mrs. Martel substantial embarrassment, anxiety, and distress.  Cadle's collecton activities against the Martels have had a devastating impact on the Martel's emotional, mental, and physical well-being.  See, 12-19-07 Affidavit of Sheila Martel and 1-11-08 Supplemental Affidavit by Sheila Martel at **Ex. G**.

### G(2).         **Cadle Subjected Francois To Unlawful Debt Collection.**

42.     In 2003 Mr. Francois was contacted for the first time by The Cadle Company, who sent him a collection letter regarding a special federal loan that he had taken out in 1993 for $5,600.00.  The loan was a special federal loan given to victims of a fire, which consumed the apartment building he had resided in.  From 1993 to 2002 Mr. Francois paid the government $27.00 a month, each month on this loan debt.  In 2002, Mr. Francois lost his job and was unable to make payments on the debt.

43.     In 2003, Mr. Francois received a phone call from a man who identified himself as an employee of The Cadle Company.  The man informed him that The Cadle Company had recently taken over the debt from the government.  The man stated that the debt was in default and that Mr. Francois had to pay The Cadle Company or they would take him to court.  Mr. Francois told the man that he had been paying $27.00 a month to the government, and then asked Cadle to send him documentation showing that they had taken over the debt and documenting what he owed.  Mr. Francois subsequently received a letter from The Cadle Company saying that they had taken over the debt from the government and that any future payments should go directly to Cadle.

44.     In the summer of 2006, Mr. Francois received a phone call from a man who identified himself as Timothy McCarthy, that he was a lawyer for The Cadle Company, and that he was calling about the debt.  Mr. Francois told the lawyer that he could not pay more than the $27.00 a month he had previously been paying the government.  The lawyer said in order to avoid a lawsuit on the debt Mr. Francois would need to pay $338.00 of interest on the $5300.00 that he said Mr. Francois owed Cadle.  Mr. Francois asked the lawyer to send him a bill for payment.  Mr. Francois did not receive a bill.

---

[11] The Martels were not parties to the *Shanley* action and after the Martels moved to intervene in the AG's enforcement action, the *Shanley* Plaintiffs withdrew their contempt motion without prejudice.

COMPLAINT
PAGE 14

45.     Shortly afterwards in August of 2006, Mr. Francois was served a lawsuit by the
Sheriff, that was filed in Cambridge District Court. The lawsuit was captioned *Cadleway
Properties Inc. v. Seremy T. Francois*, CA No. 0652CV731. In response to the Complaint,
Mr. Francois called Mr. McCarthy and was informed that in order to stop the lawsuit Mr.
Francois had to pay $338.00 in "interest". Mr. Francois again asked for the lawyer to send
a bill for payment.

46.     After this conversation, Mr. McCarthy mailed Mr. Francois a "Motion for Real
Estate Attachment" in October of 2006. The document upset Mr. Francois who did not
understand what the document was. Mr. Francois who lives with his wife and three
children in an apartment he rents from Cambridge Housing did not own any real estate but
believed the document concerned legal action that could force he and his family from their
home.

47.     In response to the "Motion" for real estate attachment, Mr. Francois called Mr.
McCarthy again and asked him what he could do to stop the lawsuit. The lawyer told Mr.
Francois again that he had to pay $338.00 and told him to send a money order to the
attorney's address and to use the case number. In response to Mr. McCarthy's demand Mr.
Francois sent a money order for $338.00, dated October 10, 2006.

48.     In March 2007, Mr. Francois received a Notice from the District Court that a
judgment had been entered against him on the debt in the name of Cadleway Properties for
$5,900.00. Mr. Francois was very upset because he had made the $338.00 payment based
on Cadle's demand that he had to make the payment in order to stop the lawsuit. Mr.
Francois made several phone calls to Mr. McCarthy's office to complain but each time he
was only able to leave a message with Mr. McCarthy's secretary or on the lawyer's
voicemail.

49.     On December 21, 2007, the Sheriff posted on Mr. Francois' door a Summons to
appear January 11, 2008 at 9:00 a.m. in Cambridge District Court regarding a
supplementary process action against Mr. Francois on the debt that Cadle had instituted in
November, 2007. The Summons stated that if Mr. Francois did not appear a Capias for his
arrest would issue.

50.     On January 9, 2008 Attorney McCarthy in response to being given notice of the
Court's 12-6-07 Restraining Order by Plaintiffs' Counsel, dismissed the supplementary
action against Mr. Francois. 1-11-08 Affidavit of Jan R. Schlichtmann, Esq. **(Ex. H)**.

51.     The conduct of The Cadle Company has been very distressing to Mr. Francois who
was deceived into paying Cadle $338 under threat that Cadle would continue the lawsuit
against him unless the payment was made. Mr. Francois remains in fear that Cadle will
continue its abusive collection activity against him and that he and his family could be
forced to leave their home. See, 1-4-08 Affidavit of Seremy Francois at **Ex. H**.

COMPLAINT
PAGE 15

### G(3).        Cadle Subjected Watson To Unlawful Debt Collection.

52.     In 2001 Cadle began its collection activities against Mr. Charles Watson regarding a
credit card debt that Mr. Watson incurred in the 1980's for personal use. Mr. Watson had
not had any communication with anyone regarding the credit card account since 1989
and believed the account had been closed.

53.     In the summer of 2001, Mr. Watson was first contacted by letter from The Cadle
Company about the purported debt. The letter was followed by phone calls from a man
who identified himself as John Benetis from The Cadle Company. Mr. Benetis informed
Mr. Watson that The Cadle Company had purchased the debt and that Mr. Watson owed
over $7,000.00 on the debt and that if he did not make acceptable arrangements for payment
of the debt, Cadle would take legal action including garnishing Mr. Watson's wages. Mr.
Benetis asked where Mr. Watson worked and that Mr. Watson "cannot hide" from Cadle
because "we will find you." Mr. Watson told Mr. Benetis where he worked. Mr. Benetis
subsequently called Mr. Watson at his work and pressured Mr. Watson to pay on the debt or
Cadle would "take legal action."

54.     Mr. Watson did not pay Cadle in response to the initial communications from The
Cadle Company. In September, 2001 Cadle initiated a "collection action" against Mr.
Watson on the debt in the names of Daniel Cadle and Robert Weltman as General Partners
of Defendant Bobby D, *Cadle et al v. Watson*, Brockton District Court CA No.
0115CV0868. In response to the suit, Mr. Watson spoke with Mr. Benetis about the debt.
As a result of the conversations and at Mr. Benetis' direction, Mr. Watson sent in two
payments to The Cadle Company in October, 2001, $25.00 and $50.00. In November, 2001
Mr. Watson entered into an "Agreement For Judgment" for $100 per month until the
Judgment amount of $7,491.18 was paid plus continuing interest. As directed by Cadle,
Mr. Watson subsequently made monthly payments to The Cadle Company over the next
several months.

55.     In May, 2004 Mr. Watson at Cadle's urging entered into an agreement to pay the
"reduced" sum of $3,000 between June, 2004 and December 1, 2004 in order to satisfy the
purported debt. Mr. Watson was informed by Cadle that Mr. Watson had only paid $1,400
during that period and Cadle "advised" Mr. Watson that the May, 2004 "Settlement
Agreement" on the debt had been "revoked."

56.     In June, 2005 Cadle increased the pressure on Mr. Watson to pay on the debt by
initiating a supplementary process action in the name of Daniel Cadle and Robert Weltman
as General Partners of Bobby D, *Cadle, et al v. Watson*, Brockton District Court No. 0515-
SP-305.

57.     In response to the pressure of the supplementary process action, Mr. Watson at
Cadle's direction, continued to make monthly payments to The Cadle Company over the

COMPLAINT
PAGE 16

next several months. Cadle kept the pressure on Mr. Watson to pay The Cadle Company on the debt by continuing to schedule and then postpone "payment review" hearings in the supplementary process case at regular intervals.

58.     In September, 2007 Cadle continued the "payment review" hearing scheduled for October, 2007 to April 9, 2008.

59.     At no time during this period did Cadle inform Mr. Watson that Cadle was not a licensed debt collector and that the DOB had issued cease directives for Cadle to stop engaging in consumer debt collection in Massachusetts.

60.     After September, 2007, When Mr. Watson became aware that Cadle was an unlicensed debt collector who had been ordered to cease its debt collection activities, Mr. Watson stopped making payments to The Cadle Company on the debt. See, 3-3-08 Affidavit of Charles Watson at **Ex. I**.

> **H.     Cadle Continued To Target Plaintiffs And Conduct Its Illegal Debt
> Collection Operation In Open Defiance Of The DOB's Directives;
> Cadle's Representations To The AG It Had Ceased Such Activity; And
> The State and Federal Restraining Orders And Injunction.**

61.     Contrary to Cadle's representations to the AG that it had ceased attempting to collect debt from Massachusetts consumers, Cadle has continued to openly defy the DOB's directives to cease such activity; continued to violate Massachusetts laws and regulations prohibiting such activities; and has violated the Restraining Orders and injunction.

62.     Cadle continued its debt collection activities against James and Sheila Martel by both debiting their account and using the filing of lawsuits and the issuance of Capias arrest warrants and supplementary process to pressure and coerce the Martels to pay Cadle on the debt after the issuance of the *Shanley* Restraining Orders and the Injunction in the AG enforcement action. See, 12-19-07 Affidavit of Sheila Martel and 1-11-08 Supplemental Affidavit of Sheila Martel at **Ex. G**.

63.     Cadle continued its debt collection activities against Seremy Francois after the issuance of the *Shanley* Restraining Orders and the Injunction in the AG enforcement action by prosecuting the supplementary process action against Mr. Francois and issuing a summons and capias for his attendance at a hearing scheduled for January 11, 2008. See, 1-4-08 Affidavit of Seremy Francois at **Ex. H**.

64.     Cadle continued its debt collection activities against Charles Watson after the issuance of the *Shanley* Restraining Orders and the Injunction in the AG enforcement action by not dismissing its supplementary process action and canceling the "payment review" hearing scheduled for April 9, 2008. See, 3-3-08 Affidavit of Charles Watson at **Ex. I**.

COMPLAINT
PAGE 17

65.    Cadle admitted to the Attorney General that it has continued to engage in consumer debt collection in Massachusetts by continuing to receive payments from debtors and communicate with debtors as well as use third parties to collect debt. 1-3-08 Letter from Bluver, Esq. to Ass't AG Engel (**Ex. J**).

### H.    Plaintiffs Remain In Fear That Cadle Will Continue To Subject Plaintiffs To Unlawful Debt Collection Activities.

66.    Plaintiffs remain in fear that Cadle will continue to subject them to Cadle's unlawful debt collection activities.

67.    Cadle withdrew its Capias for the arrest of the Martels only after its counsel's admission that the "The Defendant has been making payments." The Martels remain in fear that Cadle will resume its debt collection actions now that the Martels have directed their bank to prevent Cadle from further debiting their account. See, 12-19-07 Affidavit of Sheila Martel and 1-11-08 Supplemental Affidavit of Sheila Martel at **Ex. G**.

68.    Cadle's counsel dismissed Cadle's supplementary process action against Mr. Francois only after Mr. Francois' counsel brought to the attention of Cadle's counsel the Federal Court Restraining Order in *Shanley*. Mr. Francois remains in fear that Cadle will resume its collection action against him. See, 1-4-08 Affidavit of Seremy Francois at **Ex. H**.

69.    Cadle's supplementary process action against Mr. Watson remains active and is scheduled for a hearing in April, 2008. The supplementary process has not been dismissed and Mr. Watson remains subject to and in fear of Cadle's ongoing unlawful collection activity. See, 3-3-08 Affidavit of Charles Watson at **Ex. I**.

### I.    The Martels Have Moved, Over The Parties' Objections, To Intervene In The AG Action *Solely* To Hold Cadle In Contempt.

70.    The AG has taken no action nor has it expressed its position as to whether Defendants' ongoing debt collection activity against the Plaintiffs is unlawful.

71.    In response to the *Shanley* Plaintiffs motion to hold Defendants Daniel Cadle and TCC in contempt in that action for Cadle's ongoing debt collection in contempt of the *Shanley* Restraining Order, Defendants have stated their intention to continue their unlawful debt collection activities because, according to Defendants, the AG's inaction amounts to a tacit approval of Defendants' unlawful activity. According to Defendants: the AG's office has stated that "accepting such voluntary payments" "made sense" and that "the Attorney General has explicitly agreed that if the Cadle Group's consumer collection activities are undertaken by either a licensed debt collector or licensed Massachusetts attorneys, such

COMPLAINT
PAGE 18

conduct is not unlawful"[12] and "there has been no directive from the Attorney General's
Office [in this matter] for the Cadle entities to cease accepting voluntary payments from
Massachusetts consumers"; "there has been no notification from the Attorney General's
Office that accepting such voluntary payments violates Judge Cratsley's order"; and that the
"Attorney General's deeds (not words) speak volumes as to whether the Defendants are
acting unlawfully".[13]

72.     In response to Intervenors' inquiry[14] as to whether Cadle's representations to the
*Shanley* court about the Attorney General's purported approval of Cadle's ongoing
collection activities were accurate, the Attorney General issued a letter stating that "this
office expresses no opinion – formal or informal – as to the merits of legal arguments
advanced by either side in the *Shanley v. Cadle* matter". 1-28-08 Assistant Attorney
General Engel to Attorneys Brown and Bluver at **Ex. O**. The Attorney General stated
further that "any representation by either of you suggesting the Attorney General's support
of your position is *not accurate*". Id. (emphasis added). The AG has also stated that "we
do not take a position one way or the other as to whether Cadle's accepting payments is
'debt collection'" and "the fact that we have not done so should not be interpreted or
represented as tacit approval of Cadle's conduct".[15]

73.     The Martels have moved to intervene in the AG's enforcement action solely for the
purpose of holding Cadle in contempt of the 12-7-07 Injunction for Cadle's debt collection
activities against them and other similarly situated Massachusetts consumers. The AG and
the Defendants both have opposed the Martel's motion to intervene.

### J.     Cadle's Continuing Unlawful Activity Has Injured And Damaged Plaintiffs And All Other Consumers Similarly Situated

74.     Cadle's continuing unlawful debt collection activity against Plaintiffs and all other
consumers similarly situated has injured and damaged Plaintiffs and such others. Such
unlawful and ongoing activity has caused Plaintiffs and such others to lose money and

---

[12] 1-23-08 Cadle's Reply in *Shanley, et al v. Cadle, et al.*, USDC DMa CA No. 07-12247-RCL p.
3,4. at 2, 3-4 and fn 3. Cadle's counsel stated that he "makes this representation mindful of his
duties as an officer of the Court and aware of the responsibilities imposed by the Fed. R. Civ. P. 11"
(**Ex. M**).

[13] 1-31-08 Defendants' "Opposition To Plaintiffs' Motion For Leave To File a Supplemental
Memorandum" filed in *Shanley, et al v. Cadle, et al*, USDC DMa CA No. 07-12247-RCL p. 3,4
(**Ex. N**).

[14] Plaintiffs provided the Attorney General with a copy of Cadle's "Reply Memorandum" (**Ex. M**)
in which the representations were made.

[15] Id. at **Ex. N** p. 3.

COMPLAINT
PAGE 19

property, incur financial loss, expense and other consequential damage, suffer personal injury and emotional distress, and the invasion of their legally protected rights and interests.

### K.    Neither Cadle Nor The Regulators Have Notified Massachusetts Consumers Regarding Cadle's Unlawful Debt Collection Activities.

75.    Neither Cadle nor Massachusetts regulators have taken steps to notify Plaintiffs or Massachusetts consumers similarly situated to the Plaintiffs regarding Cadle's unlawful debt collection activities. Plaintiffs only found out about the DOB's findings and cease directives regarding Cadle's debt collection activities by the efforts of the *Soroko* and *Shanley* Plaintiffs. The Massachusetts consumers who Cadle continues to communicate with and collect debt from are not aware of the findings and cease directives of the DOB regarding Cadle's consumer debt collection activities. Without such knowledge, Massachusetts consumers are not in a position to adequately protect themselves from Cadle's ongoing unlawful activities.

### L.    Plaintiffs And All Others Similarly Situated Require Preliminary And Permanent Equitable Relief

76.    Cadle's continuing unlawful debt collection activity is: in open defiance of the DOB's three cease directives; the DOB's findings that Cadle's ongoing unlawful activity is knowing and deliberate; its representation to the AG that it had ceased such activity; and the *Shanley* Court's Restraining Order and the Injunction in the AG enforcement action. Such defiant and recalcitrant conduct requires the issuance of Preliminary Equitable Relief including an order preliminarily enjoining Defendants from engaging in any collection activity against the Plaintiffs until resolution of this matter and notice to all the other similarly situated Massachusetts consumers who Cadle has admitted it continues to communicate with and collect money from. Such conduct also requires permanent injunctive relief in order to protect Plaintiffs and all others similarly situated from being further subjected to such injurious conduct. Plaintiffs and all others similarly situated have no other adequate means of protection, during the pendency of this action, other than such Preliminary Equitable Relief and, upon conclusion of this action, Permanent relief.

### M.    Plaintiffs Can Adequately Represent All Other Similarly Situated Consumers

77.    Plaintiffs can adequately and fairly represent the interests of the other similarly situated Massachusetts consumers who continue to be subjected to Cadle's ongoing unlawful debt collection activity.

COMPLAINT
PAGE 20

## IV.   CAUSES OF ACTION

### A.   MASSACHUSETTS CONSUMER PROTECTION ACT

78.   Defendants' acts constitute Unfair and Deceptive Acts and Practices under M.G.L.
      c. 93A §2.

79.   Defendants' debt collection activity in violation of the statutes and regulations
      pertaining to such activities under M.G.L. c. 93 §24 et seq and 209 CMR §18.00
      "constitute[s] unfair or deceptive acts or practices under" M.G.L. c. 93A §2 and is
      actionable under §9.

80.   Defendants' violation of M.G.L. c. 93A §2. was knowing and deliberate.

### B.   FRAUD

81.   Defendants' acts constitute a fraud.

82.   Defendants' fraud involves the use of misleading statements and the affirmative
      misrepresentation of facts as well as the concomitant concealment of material facts
      from Plaintiffs and others similarly situated relating to Defendants' right to collect
      from Plaintiffs and others similarly situated and Plaintiffs' obligation to pay to
      Defendants on consumer debts sought to be collected by Defendants.  The
      fraudulent conduct was entered into in order to induce Plaintiffs and others similarly
      situated to pay Defendants money and/or to cause Plaintiffs and others similarly
      situated not to assert defenses, claims, and causes of action against Defendants.
      Plaintiffs and others similarly situated reasonably relied on Defendants' fraudulent
      conduct to their detriment including paying Defendants money that Defendants had
      no legal right to collect and Plaintiffs paying money to Defendants that Plaintiffs
      were not obligated to pay Defendants and/or Plaintiffs' failing to assert defenses,
      claims, and causes of action against Defendants.

### C.   ABUSE OF PROCESS

83.   Defendants' prosecution of civil actions against Plaintiffs and others similarly
      situated in order to attempt to collect consumer debt from Plaintiffs that Defendants
      knew was unlawful activity for them to engage in constituted an abuse of process.

84.   Defendants' use of such process was to accomplish the ulterior and illegitimate
      purpose to coerce Plaintiffs to pay Defendants' money that Defendants knew they
      had no legal right to collect from Plaintiffs and Plaintiffs were not legally obligated
      to pay Defendants.

COMPLAINT
PAGE 21

**D.    CIVIL CONSPIRACY**

85.    The Defendants purposely acted in concert and in unison in order to unlawfully
coerce Plaintiffs and others similarly situated to pay Defendants money that
Defendants had no legal right to collect from Plaintiffs and Plaintiffs had no legal
obligation to pay Defendants.

86.    The Defendants acting in combination had a power of coercion that any individual
Defendant standing in a like relation to Plaintiffs and others similarly situated would
not have had.

87.    Defendants needed the active, willing, and knowledgeable assistance of each other
in order to carry out the purposes of the unlawful scheme and to conceal the scheme
from Plaintiffs. None of the Defendants could have exerted the same coercive force
on Plaintiffs acting on their own as they did in combination as alleged above.

88.    Defendants' acts and conduct at issue constituted a civil conspiracy to injure and
damage Plaintiffs and others similarly situated.

**E.    DECLARATORY AND INJUNCTIVE RELIEF**

89.    **Declaratory Relief**

Plaintiffs respectfully request the court declare the following regarding Defendants'
conduct against Plaintiffs and all others similarly situated:

The consumer debt collection activities by Defendants against Plaintiffs and
all other similarly situated Massachusetts consumers constitute unfair and
deceptive acts and practices in violation of M.G.L. c. 93 §24 et seq and 209
CMR 18.00 and M.G.L. c. 93A §2.

90.    **Preliminary And Permanent Injunctive Relief**

Plaintiffs respectfully request the court enter an order granting the following

equitable relief on a Preliminary basis:

A.    Preliminary Injunction:

During the pendency of this acton and until further order of this Court, Defendants,
their owners, officers, agents, and attorneys are hereby enjoined from engaging in
any activity that attempts to collect from Plaintiffs the consumer debt at issue in this
case;

COMPLAINT
PAGE 22

B.     Adequacy of Representation:

For purposes of granting Plaintiffs' request for Preliminary relief, the Court finds
that Plaintiffs adequately and fairly represent the class of consumers who
Defendants continue to communicate with and collect debt from.

C.     Order To Give Notice:

Defendants, their owners, officers, agents, and attorneys are hereby ordered to
provide, within 30 days, written notice of this action and the DOB's Decisions and
cease directives issued 4-14-03, 12-10-03, and 6-22-07 to any and all Massachusetts
consumers who Defendants continue to communicate with or collect or attempt to
collect debt from.  The Notice shall be sent by Certified US Mail to the last known
address of such individual.  The Notice shall include a copy of Plaintiffs' Complaint
and the DOB's Decisions and cease directives.  Defendants shall furnish to the
Court, within 7 days of providing such Notice, a statement that Defendants have
complied with the Court's Order.  Such Statement shall include a list of the
individuals so notified, the address the notice was sent, and the date and manner the
notice was sent.

       And Plaintiffs request, after hearing, trial, and adjudication that the Court enter such
Permanent Injunctive Relief as will protect Plaintiffs and all other similarly situated
Massachusetts consumers from Cadle's attempting to unlawfully collect consumer debt in
Massachusetts.

V.     **DEMAND FOR RELIEF**

       For these reasons, Plaintiffs respectfully request the Court grant the following relief:

       A.     On Behalf Of Themselves:

              1.     Preliminary (Permanent) Injunctive Relief:

                     During the pendency of this acton and until further order of this
                     Court, Defendants, their owners, officers, agents, and attorneys are
                     hereby enjoined from engaging in any activity that attempts to collect
                     from Plaintiffs the consumer debt at issue in this case;

                     Upon adjudication, such relief be made permanent.

              2.     Damages/Equitable Relief:

COMPLAINT
PAGE 23

       a.     Restitution of any sums and disgorgement of any gains unlawfully collected from Plaintiffs or received by Defendants and the cancellation of the purported debt upon which Cadle based its claim;

       b.     Compensatory, consequential and actual damages including costs, expenses, and attorneys fees as permitted by law;

       c.     Treble damages for Defendants' knowing and willful violation of M.G.L. c. 93A §2.;

B.    On Behalf of Themselves And All Others Similarly Situated:

    1.    Declaratory Relief:

    The consumer debt collection activities by Defendants against Plaintiffs and all others similarly situated Massachusetts consumers constitute unfair and deceptive acts and practices in violation of M.G.L. c. 93 §24 et seq and 209 CMR 18.00 and M.G.L. c. 93A §2.

    2.    Preliminary Equitable Relief:

       a.     Adequacy of Representation:

       For purposes of granting Plaintiffs' request for Preliminary relief, the Court finds that Plaintiffs adequately and fairly represent the class of consumers who Defendants continue to communicate with and collect debt from.

       b.     Order To Give Notice:

       Defendants, their owners, officers, agents, and attorneys are hereby ordered to provide, within 30 days, written notice of this action and the DOB's Decisions and cease directives issued 4-14-03, 12-10-03, and 6-22-07 to any and all Massachusetts consumers who Defendants continue to communicate with or collect or attempt to collect debt from. The Notice shall be sent by Certified US Mail to the last known address of such individual. The Notice shall include a copy of Plaintiffs' Complaint and the DOB's Decisions and cease directives. Defendants shall furnish to the Court, within 7 days of providing such Notice, a statement that Defendants have complied with the Court's Order. Such Statement shall

COMPLAINT
PAGE 24

> include a list of the individuals so notified, the address the
> notice was sent, and the date and manner the notice was sent.

C.    Consolidation With Related Actions:

Plaintiffs request that this action be consolidated with the following pending
related actions:

-*Chase (Soroko) v. Cadle, et al*, Suffolk Superior Court CA No. 04-0375-
BLS1;
-*Commonwealth of Massachusetts v. Daniel Cadle, et al*, Suffolk Superior
Court CA No. 07-5359-D; and,
-*Cadle II v. Mass. Division of Banks*, Suffolk Superior Court CA No. 07-
03202-A.

D.    Such other and further relief as the court deems just and proper.

## VI.    DEMAND FOR JURY TRIAL

The Plaintiffs demand a jury trial as is their right regarding any issue triable by a
jury as allowed by law.

Dated: March 3, 2008

Respectfully submitted by their attorneys,


Jan R. Schlichtmann, Esq.
BBO #445900
D. Scott Dullea
BBO #
PO Box 233
Prides Crossing, Ma. 01965
978-927-1037
F: 978-232-9668

# EXHIBIT A



# The Commonwealth of Massachusetts

## Office of the Commissioner of Banks
### One South Station
### Boston, Massachusetts 02110

MITT ROMNEY
GOVERNOR

KERRY HEALEY
LIEUTENANT GOVERNOR

THOMAS J. CURRY
COMMISSIONER OF BANKS

BETH LINDSTROM
DIRECTOR
OFFICE OF CONSUMER AFFAIRS
AND BUSINESS REGULATION

April 14, 2003

Daniel C. Cadle, President
The Cadle Company
100 North Center Street
Newton Falls, Ohio 44444

**RE: Directive to Cease and Desist Unlicensed or Unauthorized Debt Collection Activities in the Commonwealth of Massachusetts**

Dear Mr. Cadle:

The Commonwealth of Massachusetts Division of Banks (the "Division") has received information relative to The Cadle Company's debt collection activities in the Commonwealth of Massachusetts.

The records of the Division indicate that you are neither licensed nor bonded to do business as a collection agency in Massachusetts. Be advised that engaging in the conduct of a collection agency in Massachusetts without a license from the Commissioner of Banks is a violation of Massachusetts General Laws chapter 93, sections 24 through 28, inclusive, and the Division's regulation at 209 CMR 18.00 et seq. Please be advised that the violation of the aforementioned statutes and regulations **may subject you to punishment by a fine of up to five hundred dollars or by imprisonment for not more than three months, or both.** Furthermore, violations of General Laws chapter 93, sections 24 through 27 are considered unfair or deceptive acts or practices under the provisions of General Laws chapter 93A. For violations of General Laws chapter 93A **you may be subject to action by the Attorney General of the Commonwealth and** to individual causes of action brought by consumers, who are statutorily provided with certain rights to seek damages pursuant to the Commonwealth's omnibus consumer protection provisions established by General Laws chapter 93A.

**You are hereby directed to immediately cease engaging in any unlicensed or unauthorized collection activity in Massachusetts** until such time as you have been issued a license by the Commissioner of Banks to engage in the business of a collection agency in the Commonwealth or otherwise satisfactorily established that The Cadle Company is exempt from the licensing requirements of General Laws chapter 93, section 24.

The Cadle Company
April 14, 2003
Page Two

Enclosed are copies of the statute and regulations relating to the operation of a collection agency within the Commonwealth of Massachusetts. Also find enclosed an affidavit which must be completed by a duly authorized officer of The Cadle Company and returned to Bonita M. Irving, Senior Deputy Commissioner for Compliance and Community Affairs within ten (10) days from the receipt of this letter.

Should you need further clarification or have any questions regarding the licensing process, please contact Supervisor of Loan Agencies Kevin McNamara at (617) 956-1500, extension 551.

Very truly yours,

Thomas J. Curry
Commissioner of Banks

Enclosures

CERTIFIED MAIL # 7002 2410 0004 6684 9568

# EXHIBIT B



# The Commonwealth of Massachusetts

### Office of the Commissioner of Banks
### One South Station
### Boston, Massachusetts 02110

**MITT ROMNEY**
GOVERNOR

**KERRY HEALEY**
LIEUTENANT GOVERNOR

**THOMAS J. CURRY**
COMMISSIONER OF BANKS

**BETH LINDSTROM**
DIRECTOR
OFFICE OF CONSUMER AFFAIRS
AND BUSINESS REGULATION

<u>By Facsimile and Certified Mail</u>

December 10, 2003

Daniel C. Cadle, President
The Cadle Company
100 North Center Street
Newton Falls, OH 44444-1321

Dear Mr. Cadle:

This letter constitutes the Notice of Denial as well as the written decision and findings by the Division of Banks ("Division") under Massachusetts General Laws chapter 93, § 24, relative to the July 10, 2003 application of The Cadle Company for a license to operate the business of a collection agency.

Collection agencies are licensed and regulated under said Chapter 93, §24 and its implementing regulation 209 CMR 18.00 et seq. Pursuant to section 24B of chapter 93, the Division is specifically authorized to obtain financial statements and references from applicants, as well as make an investigation into an applicant's reputation, integrity, and net worth.

The Cadle Company (hereinafter, "TCC" or "Applicant") is an Ohio corporation organized to purchase and manage loan portfolios. All of the outstanding common stock of TCC is owned by Daniel C. Cadle, its President and Chief Executive Officer. TCC acquires loan portfolios and performs collection services for several affiliates. It is related to these affiliates either as a partner or through the ownership of Daniel C. Cadle.

In a letter dated April 14, 2003, Mr. Cadle was notified by the Division that complaints had been received regarding TCC's debt collection activities in Massachusetts. In that letter, TCC was directed to cease conducting any such activities until it had obtained a license or had established that it was exempt from the licensing requirement. Based on TCC's refusal to provide the Division with information regarding its operations and corporate structure, the Division referred the matter to the Massachusetts Attorney General in a letter dated May 16, 2003. Subsequently, the Division was contacted by several elected officials who had received complaints from constituents regarding the debt collection practices of TCC and Daniel C. Cadle.

On July 10, 2003, TCC submitted an application to the Division for a license as a collection agency. After a careful review and analysis of TCC's application and its qualifications for licensure, the Division makes the following findings:

(a)     The audited financial statements for TCC as of December 31, 2002 and 2001 indicate an adjusted net worth of ($10,924,122) and ($12,464,225), respectively. Furthermore, as manager or general partner of its affiliates, TCC is the co-borrower or guarantor on certain payable obligations of these affiliates. As of December 31, 2002, TCC is co-borrower of $9,739,835 and guarantor of $44,798,400. The financial statements also indicate that TCC has accrued $450,000 for estimated claims and settlements related to litigation.

(b)     The Division is in receipt of numerous complaints from Massachusetts' debtors regarding TCC's debt collection activities. These complaints raise serious questions regarding TCC's debt collection practices which, if true, would constitute violations of 209 CMR 18.00. Moreover, a collection letter submitted in support of one of these complaints indicate that TCC continued to operate in Massachusetts in violation of the Division's April 14, 2003 Cease Order.

(c)     The license application contains several questions relating to whether the applicant or any of its parent companies, subsidiaries, affiliates, senior officers, directors or other principals have been the subject of regulatory action, had a license denied, suspended or revoked, or been the subject of any criminal prosecution which resulted in a finding other than "not guilty." In response to these questions, TCC indicated that: (1) In 2001, the Connecticut Department of Environmental Protection (DEP) obtained a judgment of $2,100,000 against Cadle Properties of CT, Inc., for violation of a DEP pollution abatement order; (2) In 1998, the Office of the Comptroller of the Currency denied a Notice of Change of Control filed by Daniel C. Cadle with respect to Malta National Bank; (3) In 1994, Daniel C. Cadle was found guilty of violating Ohio codified ordinances 381.04 (d) and 383.28(b), for failing to remove underground storage tanks and; (4) Daniel C. Cadle is the defendant in a pending criminal proceeding in Ohio for "Complicity, O.R.C. 2923.03 (open dumping 3734.03)," a third degree felony.

(d)     In response to Question #27 on the license application which requests a list of any litigation pending against the applicant, TCC submitted a twenty-eight page addendum identifying 26 separate lawsuits. Although the nature of this litigation varies widely, several suits allege violations of the Fair Debt Collection Practices Act, state consumer protection laws, and fraud. One of these matters, which has been unsuccessfully appealed to the Texas Supreme Court and which will now apparently be pursued in U.S. District Court, involves a contempt judgment and penalties against Daniel C. Cadle and TCC for failing to comply with a court order to turn over company assets to pay a judgment. Daniel C. Cadle and TCC were fined $461,000, and Daniel C. Cadle was sentenced to 180 days imprisonment, which has not yet been served.

With respect to these findings, the financial condition of TCC is a matter of particular concern. The Division notes that the vast majority of TCC's assets are receivables, described as "Due from Affiliates," a disallowable asset. After subtracting this asset, TCC shows a significant negative net worth. In addition to this balance sheet inadequacy, the materials submitted by TCC indicate that it has substantial contingent liabilities. Most problematic, TCC reports that it is the co-borrower or guarantor of significant sums but provides no comment on whether these contingent liabilities will affect the financial stability of TCC.

Of further concern is the Applicant's pattern of violating regulatory and judicial orders. For one such violation, Daniel C. Cadle has been ordered to serve 180 days in prison. In addition, and in spite of having been ordered by the Division to cease operations in Massachusetts, the complaints filed by

2