UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-10388-GAO

SHEILA MARTEL, ET AL.,
Plaintiffs,

v.

DANIEL CADLE, ET AL.,
Defendants.

ORDER
September 23, 2011

O'TOOLE, D.J.

After review of the magistrate judge's Report and Recommendation ("R&R") (dkt. no. 102), the relevant pleadings, the parties' motions and supporting papers, I hereby ADOPT the magistrate judge's R&R for the reasons set forth in this Court's September 23, 2011 Order in Shanley v. Cadle, 07-12247-GAO (dkt. no. 168).

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHLEEN SHANLEY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 07-12247-GAO |
| ) | |
| DANIEL CADLE, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| SHEILA MARTEL, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 08-10388-GAO |
| ) | |
| DANIEL CADLE, et al., ) | |
| ) | |
| Defendants. ) | |

REPORT AND RECOMMENDATION ON
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
THE MOTIONS TO INTERVENE FILED BY NAVARRO AND MADDEN

June 17, 2011

SOROKIN, M.J.

The six plaintiffs in <u>Shanley et al. v. Cadle et al.</u>, Civil Action No. 07-12247-GAO, have moved for class certification. Docket # 96. Within their motion, the Plaintiffs' counsel reports that the motion is joined by the four plaintiffs in <u>Martel et a. v. Cadle et al.</u>, Civil Action No. 08-10388, as well as by Plaintiff Charest in <u>Soroko et al. v. The Cadle Company et al.</u>, Civil Action

1

No. 10-11788-GAO, and by Plaintiff Pilalas from <u>Pilalas v. Cadle et al.</u>, Civil Action No. 09-11972-GAO. In addition, two non-parties Richard Navarro and Dennis Madden, seek to intervene to become additional named plaintiffs in the <u>Shanley</u> matter. Docket #s 130, 136.

For the following reasons, I RECOMMEND that the Motion for Class Certification be DENIED and that the Motions to Intervene likewise be DENIED.

### The Nature of the Claims Asserted

The Plaintiffs in <u>Shanley</u> assert that the Defendants engaged in unlicensed debt collection in violation of Massachusetts law. They advance claims for: violation of the Massachusetts Consumer Protection Act, M.G.L. ch. 93A; for bad faith enforcement of rights and interests under the Massachusetts Uniform Commercial Code; as well as under the common law for fraud, abuse of process and civil conspiracy. Docket #1-6 at 10-12. The Plaintiffs allege that bad faith and fraud permeated the Defendants' unlicensed debt collection activities (in the form of misleading statements and affirmative misrepresentation of the facts) and they seek (both individually and on behalf of the purported class) declaratory and injunctive relief, restitution of sums unlawfully collected, compensatory and consequential damages and treble damages under c. 93A.

### Motion to Certify Class

I RECOMMEND that the Plaintiffs' Motion to Certify Class (Docket # 96) be DENIED because the class as proposed is not ascertainable. In addition, although the Plaintiffs have demonstrated numerosity and commonality, they have not demonstrated adequacy, and the claims are not appropriate for class treatment under Fed. R. Civ. P. 23(b)(2) because the relief sought is predominantly monetary.

2

### The Proposed Class

The Plaintiffs seek to certify the following class:

All Massachusetts residents who Defendants[1] collected or attempted to collect consumer debt against without a license to do so (the 'Class') during the period from November 23, 2003 through the present (the "Class Period").

Docket # 96 at 1.

### Applicable Standard

A court may certify a class pursuant to Fed. R. Civ. P. 23, only if the Plaintiffs establish that all the requirements of Rule 23(a) are satisfied and that class-wide adjudication is also appropriate for one of the reasons set forth in Rule 23(b). See Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir.2003).

Fed. R. Civ. P. 23(a) requires that a class meet the following criteria: (1) "the class is so numerous that joinder of all members is impracticable" (numerosity); (2) "there are questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality); and, (4) "the representative parties will fairly and adequately protect the interests of the class" (adequacy). Fed. R. Civ. P. 23(a)(1)(4).

The Plaintiffs in this case urge certification pursuant to Fed. R. Civ. P. 23(b)(2). Docket # 97 at 15.[2] Rule 23(b)(2) is applicable where "the party opposing the class has acted or refused

---

[1] Namely, The Cadle Company; The Cadle Company II, Inc.: Cadlerock Joint Venture II, LP; Cadlerock II, Inc; Cadleway Properties, Inc.; and Boddy D. Associates. Docket # 96 at 1 n.1.

[2] Although the Plaintiff's motion itself includes reference to Rule 23(b)(1), the memorandum in support of the motion does not address that subsection.

3

to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"A district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class." Smilow, 323 F.3d at 38 (citing Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982)). Furthermore, a court may "probe behind the pleadings" when factual premises are disputed and "formulate some prediction as to how specific issues will play out." In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 20 (1st Cir.2008) (citation and internal quotation marks omitted).

<u>Ascertainability</u>

As part of the analysis required by Rules 23(a) and (b), the Court must decide whether the proposed class satisfies the implicit requirement of Rule 23 that determining whether a particular individual is a member of the class is administratively feasible. See, e.g., Donovan v. Philip Morris USA, Inc., 268 F.R.D. 1, 6 (D.Mass.2010) (Gertner, J.). It is not necessary that all class members be identified at the outset, but only that the class can be determined by stable and objective factors. Donovan, 286 F.R.D. at 6 (citing Kent v. SunAmerica Life Ins. Co., 190 F.R.D. 271, 278 (D.Mass.2000) (Keeton, J.)), however, the First Circuit has stated that when "class members [are] impossible to identify prior to individualized fact-finding and litigation, the class fails to satisfy one of the basic requirements for a class action under Rule 23." Crosby v. Social Sec. Admin of U.S., 796 F.2d 576, 580 (1st Cir.1986).

The Defendants assert that the proposed class is not readily ascertainable because whether or not the Defendants have collected a debt from an individual without a license (or attempted to do so without a license) is not an objective fact, but rather a legal determination requiring

"detailed inquiry into the particulars of each potential claimant's circumstance." Docket # 133 at 7.

Indeed, in order for the Court to ascertain whether an individual was a member of the class it would require the determination of additional facts particular to each putative member. For example, there are categories of debt, the collection of which by the Defendants would not require a license.[3] In addition, the collection of a debt either by a licensed collector (at some point one defendant obtained a license), or without a license by an attorney (a practice in which the Defendants engaged to at least some degree) is also not unlawful. The Court would necessarily have to determine the particular circumstances surrounding each putative class member's debt and of the collection efforts undertaken by the Defendants, or else risk sweeping into the class individuals whose factual circumstances either were materially different than those of the class representatives or implicated no legally-proscribed conduct.

### Rule 23(a) Factors

#### Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the proposed class be so numerous that joinder of all of it members is impracticable. There is no threshold number of class members that automatically satisfies this requirement. Gen'l Tel. Co. Nw. v. EEOC, 446 U.S. 318, 329 (1980). "[M]ere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1)." 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1762 (2004).

---

[3] For example, a person who attempts to collect a debt that was not in default at the time it was obtained is not a "debt collector" within the meaning of the Massachusetts statute requiring licensure. M.G.L. c. 93 § 24 (definition of "debt collectors").

The Plaintiffs assert that the proposed class numbers are "substantially over a thousand" members. The Plaintiffs have submitted into evidence a spreadsheet which they affirm "documents that Defendants collected against thousands of Massachusetts consumers during this period." Docket # 98 at ¶ 3; Docket # 99-1. This spreadsheet constitutes the entirety of the Plaintiff's evidentiary demonstration with regard to numerosity. As discussed previously with regard to ascertainability, the fact that the Defendants may have collected debts on a large number of accounts does not necessarily tell the Court how many such accounts were consumer accounts, and how many consumer accounts were subject to unlicensed debt collection. Some undefined subset of the debts reflected on the spreadsheet which are consumer accounts might legally be collected without a license, and some of the Defendants' debt collection activities were conducted by persons (such as attorneys at law) who are not "debt collectors" within the meaning of relevant statutory scheme.[4]

Nonetheless, Plaintiffs have established the numerosity requirement. Cadle testified at his deposition that in terms of numbers of accounts (rather than dollar volume) the vast majority of the receipts listed on the spreadsheet reflect consumer accounts. Docket # 140-1 at 17-18. He also testified that approximately sixty to eighty percent of the spreadsheet accounts constitute delinquent debt. Id. Hence, numerosity is satisfied.

---

[4] For example, Cadle affirms concerning the spreadsheet submitted by the Plaintiffs as evidence of numerosity inter alia : that the document reflects receipts received by Cadle entities from individuals or entities with Massachusetts in their mailing address; that as much as 75-80% of the receipts reflected relate to commercial rather than consumer debt; that many of the accounts were not in default when purchased or acquired by the Cadle entities (and thus no license is required to collect on these accounts); that some of the accounts were collected by licensed collectors or by attorneys; and some accounts reflected the execution of judgments. See Docket # 134 at ¶ 3. The Plaintiffs in their reply have submitted into evidence the deposition testimony of Cadle concerning the spreadsheet.

Commonality, Typicality and Adequacy

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality focuses on the relationship of common facts and legal issues among class members." DeRosa v. Massachusetts Bay Commuter Rail Co., 694 F.Supp.2d 87, 98 (D.Mass.2010) (Wolf, C.J.)

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The representative plaintiff satisfies the typicality requirement when its injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." In re Credit Suisse-AOL Securities Litigation, 253 F.R.D. 17, 23 (D.Mass.2008) (Gertner, J.) (citation omitted). "The typicality inquiry 'is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" In re Boston Scientific Corp. Sec. Litig., 604 F.Supp.2d 275, 282 (D.Mass.2009) (quoting In re Prudential Ins. Co. Am. Sales Litig., 148 F.3d 283, 311 (3d Cir.1998)). "The primary focus of the typicality analysis is the functional 'question of whether the putative class representative can fairly and adequately pursue the interests of the absent class members without being sidetracked by her own particular concerns.'" Credit Suisse-AOL, 253 F.R.D. at 23 (quoting Swack v. Credit Suisse First Boston,230 F.R.D. 250, 264 (D.Mass.2005)).

The commonality and typicality analyses "tend to merge", since "[b]oth serve as guideposts for determining whether . . . the named plaintiff[s'] claim [s] and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in

7

their absence. General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 n. 13 (1982). Likewise, the typicality and adequacy analyses tend to merge, because adequacy under Rule 23(a)(4) presents a two step analysis: the Court must determine, "'first, whether any potential conflicts exist between the named plaintiffs and the prospective class members, and, second, whether the named plaintiffs and their counsel will prosecute their case vigorously.'" Credit Suisse-AOL, 253 F.R.D. at 23 (quoting Guckenberger v. Boston Univ., 957 F.Supp. 306, 326 (D.Mass.1997) (quoting In re Bank of Boston, 762 F.Supp. 1525, 1534 (D.Mass.1991))). The first step of the adequacy inquiry tends to overlap with the typicality inquiry. Credit Suisse-AOL, 253 F.R.D. at 23 n. 3; Falcon, 457 U.S. at 157 n. 13. "Both typicality and adequacy may be defeated where the class representatives are subject to unique defenses which threaten to become the focus of the litigation." Credit Suisse-AOL, 253 F.R.D. at 23 (quoting In re Salomon Analyst Metromedia Litig., 236 F.R.D. 208, 213 (S.D.N.Y.2006)). Accordingly, it is appropriate to address these elements collectively.

The Plaintiffs assert that the questions of law and fact common to the class include the unlicensed collection of consumer debt from class members, the lack of disclosure to class members that the Defendants lacked a license, and the lack of disclosure to class members of the existence of cease and desist directives from the Division of Banks to the Defendants concerning unlicensed debt collection. Docket # 97 at 12. The Plaintiffs assert that the typicality requirement is met because the same unlawful conduct (the Defendants' unlicensed debt collection and the Defendants' deceptive practice of not disclosing the fact that they were not licensed) underlies the claims of the class representatives and the putative class. Id. at 12-13.

While the Plaintiffs appear to satisfy the commonality requirement (in that each claim has

as its basis the alleged unlicensed collection of consumer debt), on the record before the Court, the Plaintiffs have not satisfied their burden of showing adequacy or typicality.

### Adequacy

Each of the twenty proposed class representatives is inadequate and atypical. Plaintiff Pilalas and Plaintiff Charest's are inadequate class representatives because their claims are subject to unique defenses and are the subject of separate Report and Recommendations of this date in which the undersigned recommends that summary judgment enter in the Defendants' favor.

The other eighteen plaintiffs are inadequate class representatives because each has previously been a party to a binding settlement agreement resolving their individual cases. See the Report and Recommendation of this date issued in Soroko et al v. The Cadle Company, et al., Civil Action No. 10-11788-GAO. As described in that Report and Recommendation, there is no doubt that these proposed class representatives were among the parties who formed a binding settlement agreement. See also Chase v. Cadle Co., 78 Mass.App.Ct. 1102, *1 (2010).

If the Court accepts the Report and Recommendation and enters summary judgment on the named Plaintiffs breach of contract claim arising out of the settlement, then these proposed class representatives will be parties to a binding agreement that provides for dismissal of all of their individual claims and a waiver of all appeals. In that circumstance, these plaintiffs cannot serve as adequate class representatives. While both sides have each affirmatively disclaimed interest in enforcing the settlement agreement at this time, the parties have not, together, revoked the agreement and, in the absence of a binding concession, the existence of the agreement prevents the Plaintiffs from qualifying as class representatives.

9

Finally, all of these proposed class representatives recently agreed to settle their individual claims and then petitioned multiple judges and courts to enforce the settlement. Plainly, the Plaintiffs desired the fruits of the settlement they had reached more than pursuing the class actions they had filed. While this was and is a permissible course of action, it does raise serious concerns when they now seek the Court to vest in them responsibility for litigation on behalf of the class. In the present circumstances, I recommend that this also renders them inadequate and atypical.

Attorney Lagorio (and only he) signed the motion to certify the class and seeks appointment as class counsel. His background and experience as set forth in his resume suffice to qualify him as competent and adequate class counsel.

### Rule 23(b) Factors

The Plaintiffs seek certification pursuant to Rule 23(b)(2). Docket # 97 at 15. The Parties are in agreement that a class certified under Rule 23(b)(2) must not primarily seek monetary damages. See Docket # 97 at 15 (citing Donovan, 268 F.R.D. at 26-27); Docket # 133 (citing Allison v. Citgo Petroleum Corp., 151 F.3d 402, 411 (5th Cir. 1998)). The Plaintiffs assert that the predominant relief sought by them is injunctive and equitable. Docket # 97 at 15. Not surprisingly, the Defendants argue the opposite.

There are two approaches to the question of the proper legal standard for evaluating whether injunctive relief is "predominant" when, as here, the putative class seeks injunctive relief as well as compensatory damages. See DeRosa v. Massachusetts Bay Commuter Rail Co., 694 F.Supp.2d 87, 103 (D.Mass.2010) (Wolf, C.J.). Neither approach has been adopted by the First Circuit. Id. Under the majority approach (first articulated in the Allison case cited by the

Defendants), "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive relief . . . By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." Allison, 151 F.3d at 415. The minority approach originated with the Second Circuit's decision in Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147 (2nd Cir.2001), which concluded that: "the district court may allow (b)(2) certification if it finds in its 'informed, sound judicial discretion' that (1) 'the positive weight or value [to the plaintiffs] of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed,' and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy.'" Robinson, 267 F.3d at 164.

The majority approach has found some favor in the District of Massachusetts. See DeRosa, 694 F.Supp.2d 87, 104 and cases cited therein. In DeRosa, Chief Judge Wolf followed the majority approach and concluded that certification under 23(b)(2) was inappropriate in that case "because plaintiffs seek compensatory and punitive damages which necessarily 'implicate[ ] the subjective differences of each plaintiff's circumstances.'" Id. at 105 (citing Allison, 151 F.3d at 417).

Such is the case here. The Plaintiffs seek compensatory and punitive damages which necessarily implicate the subjective differences in each plaintiff's circumstances, including the restitution of sums unlawfully collected from each plaintiff. The injunctive relief sought by the Plaintiffs is incidental. The benefit flowing to the putative class members of the equitable relief would be minimal or nonexistent because the Defendants now possess a license to collect consumer debt in Massachusetts. See Docket # 134 at ¶ 8. The relief sought by the Plaintiffs is

therefore predominantly compensatory, and inappropriate for class treatment under either analytical approach.

**Motions to Intervene**

I also RECOMMEND that the Motions to Intervene by Richard Navarro (Docket # 130 ) and Dennis Madden (Docket # 136) be DENIED.

Navarro and Madden each seeks to intervene pursuant to Fed. R. Civ. P. 24(a) or (b). They argue their interests as well as the interests of the putative class members support intervention because: the existing action concerns the same issues Navarro's and Madden's cases present; adjudication of those issues "will impact [their] individual and representative interests;" intervention permits them to utilize the relation back doctrine to avoid statute of limitations problems;[5] and intervention ensures adequate representations to prosecute the claims of the class. Id. at 7: Docket # 130-2 at ¶ 6. Moreover, neither Navarro nor Madden are parties to the settlement agreement. Id.

Navarro affirms that he received a collection letter from The Cadle Company in 1995, asserting that it owned debt originating with a Coolidge Bank credit card. After a judgment was obtained against him in the Malden District Court, he made payments totaling $500 - $600 between 1995 and 2001, at which point he stopped making payments. Docket # 130-2 at ¶ 7. He affirms that the documents filed with the Malden District Court represented that the Cadle Company purchased the debt from the F.D.I.C. Id. at ¶ 8(b) citing Docket # (Exhibit I-1). On

---

[5] The availability of the relation back doctrine is not a reason supporting intervention. If the Court adopts my recommendations, the two intervenors would retain their rights to bring their own lawsuits to vindicate their claims. If applicable to such claims, they could avail themselves of the benefits of American Pipe tolling.

January, 2009, counsel for The Cadle Company II, Inc. (as opposed to the holder of the judgment the Cadle Company) moved the Malden District Court for issuance of successive execution in the amount of the 1995 default judgment plus interest and costs. Id. at ¶ 8(c). Similar efforts were undertaken in the Brighton District Court, culminating in the issuance of a capias for Navarro's arrest. Id. at ¶ 8(d) (citing Docket # 130-2 Exhibit 1(3)). Navarro claims that the Cadle Company II, Inc. is an unlicensed entity which collected against him in 1995 by fraudulently using the unlicensed services of The Cadle Company, and that the unlawful activities continued through the present because the Cadle Company II, Inc. fraudulently maintained that it was the same company as The Cadle Company. Id. at ¶ 19.

Madden similarly affirms that in 1996, the Cadle Company obtained a judgment against him, representing to the Court that it owned a Coolidge Bank credit card debt purchased from the FDIC, when in reality the debt was owned by The Cadle Company II, Inc. Docket # 136-2 at ¶ 3. In 2009, the same law firm which contacted Navarro sought a "replacement execution," representing to the Court that the Cadle Company II, Inc. was "formerly known as The Cadle Company." Id. He alleges that the Cadle Company fraudulently obtained the 1996 default judgment by concealing that it was collecting the debt on behalf of Cadle II, and that Cadle II fraudulently obtained the replacement execution by falsely representing that it was the same entity. Id.

Several reasons support the recommendation that the Court deny these motions. Neither Navarro nor Madden present a basis for intervention as of right under Fed. R. Civ. P. 24(a)(2). Their claims concern different property or transactions than the claims of the existing plaintiffs, e.g. their claims concern their own alleged debts and the efforts to collect these debts by the

defendants.

Although the similarity of Navarro and Madden's claims to those of Plaintiff Francois, place the motions to intervene within the permissive intervention ambit of Fed. R. Civ. P. 24(b)(1)(B) due to common questions of law and fact, the Court should decline to exercise its discretion to permit intervention. First, for the reasons described above, this action is not appropriate for class certification.[6] In the context of a non-class case, intervention would only serve to delay and complicate the case by adding additional plaintiffs with claims arising out of separate sets of facts even though the claims present some common questions. Second, to permit permissive intervention, the Court must determine that Navarro's and Madden's claims are each "'supported by independent jurisdictional grounds.'" Int'l Paper Co. v. Jay, 887 F.2d 338, 346 (1st Cir. 1989)(quoting Moosehead Sanitary District v. S.G. Phillips Corp., 610 F.2d 49, 52 n. 5 (1st Cir. 1979)).[7] Neither motion alleges an amount in controversy sufficient to support, independently, jurisdiction under 28 U.S.C. § 1332(a).

Third, the claims appear to lack merit. To the extent that the claims of Madden and Navarro are based upon the 1995 or 1996 actions of the Cadle defendants, those claims are time-barred, and the relation back doctrine (which tolled the statute of limitations as of the 2007 filing of the Shanley case) was triggered much too late to save those long-expired claims.

To the extent that their claims are instead based upon the allegedly-fraudulent 2009 state

---

[6] Several of the reasons supporting denial of the motion for class certification are unrelated to the settlement agreement. Thus, permitting Navarro or Madden to intervene would not change the undersigned's recommendation on the class certification motion.

[7] I note that the proposed amended complaint, Docket #130-1, lacks the required "short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1).

court filings of the Kream & Kream attorneys in attempting to resuscitate the judgments against Madden and Navarro, or upon statements made by those attorneys to Madden and Navarro in 2009, those actions (whatever evidentiary value they may have in supporting other types of claims or in reversing the 2009-2010 decisions of the state court) do not themselves constitute actionable debt collection activities within the meaning of the statutes at issue in the Shanley and Martel cases, since attorneys at law are not "debt collectors" within the meaning of M.G.L. c. 93 § 24. See supra at 5 n.3.

For these reasons, I recommend that the Court deny both motions to intervene.

III. CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court DENY the motions to intervene of Dennis Madden (Docket # 136) and Richard Navarro (Docket # 136) and DENY the Plaintiffs' Motion for Class Certification (Docket # 96).[8]

　　　　　　　　　　　　　　　　　　　　/s / Leo T. Sorokin
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

---

[8] The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).